McKENZIE *v.* CALL.

1. FRAUD—EVIDENCE—EQUITY.

Upon a review of conflicting testimony, it is *held*, that complainants' bill to cancel an exchange of real and personal property should be dismissed for failure of complainants to establish that they relied on the alleged false representations as to value; *held*, also, that defendants did not falsely represent that certain pianos were free from incumbrances or conceal the amount due thereon.

2. SAME—CROSS-BILL—WARRANTY.

No relief can be awarded to defendants, as prayed in their cross-bill, filed in a suit to cancel or annul an exchange of property, where complainants charged fraud and defendants claimed damages for breach of warranty.

Appeal from Shiawassee; Miner, J. Submitted April 17, 1913. (Docket No. 80.) Decided July 9, 1913.

Bill by William E. McKenzie and Tod Kincaid against Rose Call and Emma Connelly for cancellation of certain deeds and contracts and for an injunction. Bill dismissed as to defendant Connelly. Defendant claimed affirmative relief. From a decree for complainants, defendant appeals. Reversed; bill and cross-bill dismissed.

*A. L. Chandler,* for complainants.

*Brennan, Donnelly & Van De Mark (S. O. Van De Mark,* of counsel), for defendant.

STONE, J. The bill of complaint in this cause stated: That complainants on September 20, 1909, were the owners of certain lots in the city of Corunna upon which there was a valuable dwelling house and outbuildings of the value of $6,000; that they sold said

property to defendant Emma Connelly of Detroit, and took back a purchase-money mortgage of $2,500; that said purchaser never made any payments upon said mortgage, and that under the power of sale therein said mortgage was foreclosed on April 11, 1911, by a public sale to complainants for $2,669, not including costs, and that complainants held a sheriff's deed of said premises, subject to redemption; that, desiring to convert their interest into "more liquid" assets, they on August 9, 1911, sold and transferred their equity in said property to defendant Rose Call of Detroit; that they executed and delivered to said last-named defendant a warranty deed, subject to redemption from said foreclosure for an expressed consideration of $1 and other considerations to them paid; that said defendant Call in consideration of said conveyance agreed to sell and deliver to complainants a certain amount of personal property consisting of furniture located in a rooming house in Detroit, known as 153 Congress street east; that, in order to induce complainants to make the exchange, said defendant represented that said furniture was of the value of $6,000, and was insured for $10,000; that she desired to dispose of the same, and rent the house to complainants, as she was to be married in a day or two, and was going to leave for California, and was anxious to close the deal immediately; that if complainants would rent the house for one year, to be occupied for rooming purposes, for a rental of $175 per month, she would immediately deliver all of said property, and that complainants could rent said house and furniture to her sister, called Beatrice Bell, that she, said defendant, would not lease to her sister directly, but that, if complainants would lease the house and sublease to said sister, the latter would take said house and furniture at a rental of $575 per month in advance, and complainants would thus have immediate use for the fur-

niture which they were purchasing from said defendant; that complainants believed the statements of said defendant with reference to the value of said furniture, and defendant's purpose in selling, and the rental of said property, and accepted said furniture, and the lease of said house, and rerented the same to said Beatrice Bell for one year, with the privilege of five years, after August 9, 1911, for the rental of $6,900 per annum in payments of $575 per month, payable monthly in advance. That the defendant represented to complainants that said furniture was free and clear from all liens and incumbrances, except a debt of $930 to Crowley, Milner & Co., and $1,780 to Weil & Co., which representations were untrue, and known to be untrue, as the pianos mentioned in the bill of sale of said furniture had not been paid for, and that there were over $700 due on said pianos alone, and that there were other incumbrances on said property, which made the same of little or no value whatever to complainants, and that they never had received possession of the same. That said furniture was of no value over and above the incumbrance thereon: that defendant had no intention of getting married or leaving the city, and her sister, Beatrice Bell, did not intend in good faith to lease said building and furniture of complainants, and said statement and leasing amounted to a conspiracy between said persons to cheat and defraud complainants, and get them to take said lot of secondhand furniture subject to said indebtedness, and to cheat and defraud complainants of the mortgage interest in said Corunna property, which scheme, as far as possible, said defendant had carried out; that after the sale of said furniture, which included all the furniture in the house, and in her possession at 153 Congress street east, the defendant entered said building and carried away a large amount of said furniture, the exact value of which complainants were not able to

accurately estimate, but worth several hundred dollars; that the property which defendant had turned over to complainants under said bill of sale was incumbered for over $3,000, which was more than it was worth, and that she insists on keeping said Corunna property, of the value of $3,000, without paying anything therefor; that upon complainants discovering the fraud and conspiracy to cheat and defraud them out of their said property they called upon defendant to redeliver said deed and lease, the consideration of which she had taken away, or to perform her agreement, which she had refused to do, but insisted on holding the deed of said Corunna real estate.

Complainants in their bill prayed for an injunction restraining defendant from recording the deed given by complainants; that their damages be ascertained, and the same satisfied out of any interest which defendant may have in such furniture; and that defendant be restrained from taking possession of the Corunna real estate, and that said deed and lease be canceled and delivered up to complainants. The bill of complaint was dismissed as to defendant Emma Connelly.

The answer of defendant Rose Call denied the fraud, misrepresentation, and conspiracy charged in the bill of complaint. It denied that she ever represented to complainants, or either of them, that the said furniture was worth the sum of $6,000 or any other sum. Defendant admitted that the furniture and household goods on the premises where said furniture purchased by complainants was situated were insured in the sum of $10,000, but averred that the policies covering the same included much other personal property not sold to complainants. The answer averred that long prior to the 9th day of August, 1911, and persistently up to that date, one of the complainants had solicited defendant to sell said personal property and rooming

house business; that any negotiations or agreements made with the sister of defendant relating to the leasing of said premises and the furniture and household goods therein contained, or any negotiations had with said sister relative to running said rooming house for complainants, were had directly with said sister, and not with the defendant. The answer further denied that part of the bill of complaint charging that defendant represented that the furniture was free and clear from all liens and incumbrances, except as to the amounts due Crowley, Milner & Co. and Weil & Co. The defendant averred that she had in all things carried out the contract and agreement made with said complainants; and by way of cross-bill she averred that the premises conveyed to her by complainants were not free and clear from incumbrances thereon, but certain taxes, which formed a lien thereon, due and payable prior to the year 1911, were unpaid on said premises, and that she had been obliged to pay the same, amounting to the sum of $120, in order to obtain record of said deed, and she prayed that complainants be decreed to reimburse her in this amount, with interest thereon. The complainants answered the cross-bill, and issue was joined.

The testimony taken in this case is quite voluminous, and there is an unreconcilable conflict between the testimony produced on behalf of complainants and that on the part of defendant upon nearly every material matter involved. A decree was entered for complainants in so far as relief was prayed for, relating to the conveyance of the Corunna property.

There are really three points raised by the pleadings and testimony and discussed by counsel in the case:

(1) Did defendant fraudulently deceive the complainants as to the value of the furniture, and did they rely upon such misrepresentations?

(2) Did the defendant conceal from the complain-

ants the amount due on the piano contracts, and warrant them free and clear?

(3) Were the complainants aware of the business they were buying, and does the doctrine *"in pari delicto"* obtain?

1. Some important, and we think controlling, facts appear by the documents which were introduced in evidence in the case. In the bill of sale given by the defendant to the complainants of the furniture and household goods, after enumerating the list of articles sold, appears the following:

"It is the intention of this statement to include all the furniture now in the above said place, except the pieces reserved, namely, the davenport in red room, couch in front room, all the furniture in Miss Bell's room upstairs except carpet, one dresser in east room upstairs and all furniture in Miss B. Bell's room, subject to $930 to Crowley, Milner & Co. and $1,788 to Weil & Co."

The evidence shows that the complainants were experienced business men. Complainant McKenzie was 54 years old, and had been a school teacher for many years; he had been engaged in the real estate and insurance business in the city of Detroit for some time before the transactions appearing in this case; he was well acquainted with the defendant and her sister, and the business in which they were engaged. He and a man by the name of Robinson had formerly owned the premises known as 153 Congress street east, and had sold the same to defendant upon a land contract, and he had had frequent business dealings with her prior to August 9, 1911. Complainant Kincaid was a man 61 years of age, and had been engaged, among other things, in real estate in Detroit and elsewhere. Their principal witness, Fred Rollison, was associated in the insurance business with complainant McKenzie; they occupied offices together, and he was interested also in the sale of the Corunna property. We are satisfied

from the evidence that complainants went into this deal to obtain possession of these premises in the city of Detroit with their eyes open, and of their own volition, and were not inveigled into it by defendant as claimed.

A careful examination of the testimony in the record satisfies us that they did not rely upon any representations which may have been made by the defendant as to the value of this furniture, and we think they exercised their own judgment in the purchase of the same. They carefully went through the house with the defendant and with the witness Rollison, and an inventory made by Rollison appears in the record, and the values of the articles are therein stated. The pianos appear in that inventory as valued at $400 each. The total valuation stated in that inventory, so made by Rollison, was $1,869. They concede that they took this property subject to the amounts due Crowley, Milner & Co. and Weil & Co. of $2,718. It is very evident that the value of this furniture was not the inducement or moving cause of their making this purchase of furniture and taking this lease from the defendant of the premises. The real object or purpose which they had in view was the lease made with the sister of the defendant, by the terms of which they were to receive from her a rental of $575 a month. It appears that they were to pay a rental to the defendant of $175 per month for the house, and that they turned around and rented to her sister the premises and furniture for this large amount, thus securing, by the terms of the lease, from her for the use of the furniture alone the sum of $400 monthly, or $4,800 yearly rental. This was the real purpose and object of this deal on the part of the complainants. We are satisfied, therefore, that they did not rely upon any representation as to the value of the furniture made to them by the defendant.

2. Did defendant conceal from the complainants the amount due on the piano contracts, and warrant them free and clear? There is a square conflict in the testimony upon this subject. There are, however, certain earmarks attending the transaction which are not denied by complainants, which are very pertinent upon this branch of the case. It appears that on the day of the transfer to them of this property certain insurance policies were turned over to the complainants by the defendant. These covered the furniture, pianos, musical instruments, etc. These pianos were player pianos of the nickel-in-the-slot machine variety, and had been purchased by defendant (one of them in the name of her sister, who had been her manager) of Grinnell Bros.; and one of the insurance policies expressly provided that the loss, if any, was payable to Weil & Co. and Grinnell Bros. as their respective interests might appear. These policies were turned over to the complainant McKenzie, an experienced insurance man, and he testifies that he did not observe that the policy contained the clause referred to. He claims and testifies that he did not discover that these pianos had not been paid for until on the 19th of August, 1911, when he called at the house. And, while he claims that he made some objection when he learned that the pianos had not been paid for, yet he concedes that he received the contracts from the defendant, and gave her a receipt therefor in the following language:

"August 19, 1911. Received of L. Bell two piano contracts from Grinnell Bros. W. McKenzie & Kincaid."

It appears that these contracts were, by complainant McKenzie, turned over to Beatrice Bell, who was then in charge of the premises under the lease from complainants, and that she made a payment that month on the pianos, as defendant claims, in pursuance of the understanding that Beatrice was to take charge of

these pianos and make the payments thereon. It is undisputed that complainant McKenzie had helped take the nickels, amounting to $10 in one instance, out of these pianos, and there was testimony that he then understood that these instruments were paying for themselves, and would continue to do so. Matters ran along with Beatrice in possession, running and managing this rooming house under her lease from the complainants, until the police of the city interfered, and closed the house on September 11, 1911. We are of opinion that had there not been police interference this bill of complaint would never have been filed. As we have said, there is a conflict that cannot be reconciled between the testimony on the part of the complainants and on the part of the defendant on nearly every material question involved. On the part of the defendant it is testified to that upon the house being closed the keys of the premises and these identical piano contracts were turned over to complainant McKenzie—left in his office in his presence by Beatrice. This is denied by complainant McKenzie, who seeks to show that the keys and papers were left upon the desk of the witness Rollison in an adjoining room. We do not think the difference here is important. They occupied adjoining rooms, were in the insurance business together, and both had interested themselves in this matter. Whether any of the furniture not belonging to and reserved by defendant was ever taken by her from the rooming house is also a disputed question. Defendant testified that no articles were taken. Complainant McKenzie, when examined upon cross-examination, is not very clear whether any of the articles sold to complainants had been removed or not. He was asked on cross-examination the following question, and made the following answer:

"*Q.* Do you claim there were any of the articles

that are stated in there (bill of sale) that were gone, that weren't there?

"*A.* Well, all the articles put down I suppose are there yet for all I know. I never have seen them since."

Taking the entire case together, we are of opinion that the complainants have failed to show by any preponderance of evidence that the defendant fraudulently deceived complainants as to the value of the furniture, or that they in any manner relied upon any representations that she may have made with reference to the value thereof. They went into and through the house with their eyes open, and saw what they were purchasing. They were dealing with this defendant at "arm's length," and are in no position to claim, in view of the evidence in the case, that they ever relied upon anything but their own judgment in the purchase of this furniture. Neither can we say from the evidence in the case that the defendant concealed from the complainants the amount due on the piano·contracts, or that she·ever warranted them free and clear of liens and incumbrances. Upon these two material and controlling points we are of opinion that the complainants have failed to make a case which entitles them to any equitable relief. This renders it unnecessary for us to consider the third point urged by defendant's counsel.

So far as the claim under the cross-bill is concerned, we do not think that any breach of the covenant of warranty and against incumbrances contained in the deed from complainants to defendant is the subject of relief upon a cross-bill.

In our opinion the bill of complaint and the cross-bill should both be dismissed, and the case reversed, with costs to the defendant. It is so ordered.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.